UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

HALO COMPOSITES, LLC
d/b/a HALO EFX,
a Florida limited liability company,

and

MATTHEW FONTAINE,                                         CASE No:
an individual

        Plaintiffs,

v.

MARK FIGLIOZZI,
an individual,

        Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Halo Composites, LLC d/b/a Halo EFX ("Halo"), a Florida limited liability company, and Matthew Fontaine ("Mr. Fontaine"), an individual, hereby sues Mark Figliozzi, an individual ("Defendant"), and state:

### NATURE OF ACTION

1. This is an action against Defendant for defamation, defamation *per se*, and commercial disparagement.

### JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1332 because it is between citizens of different states and the amount in controversy is over $75,000.

3. This Court has personal jurisdiction over Defendant as Defendant's actions have caused Defendant to submit himself to jurisdiction in the State of Florida pursuant to Florida's long-arm statute, Fla. Stat. § 48.193. Specifically, Defendant operates, conducts, and carries on a business enterprise, Raail Holdings Corporation ("RAAIL"), in Jacksonville, Florida via its Sales & Marketing Manager, Alan Nichols. Fla. Stat. § 48.193(1)(a)(1); https://us.raail.com/sales-representatives/ (last visited September 20, 2021). Likewise, the tortious acts committed and described herein effected citizens of the state of Florida. Fla. Stat. § 48.193(1)(a)(2).

4. Venue is proper in the Southern District of Florida, Fort Pierce District, because Halo is incorporated and located in the State of Florida and is based in Fort Pierce, Florida. Halo is run solely by Plaintiff, Matthew Fontaine, who consents to venue in this district for the purposes of this litigation.

## PARTIES

5. Halo is a Florida limited liability company, duly organized under the laws of Florida, with its principal place of business at 4403 Gator Trace Lane, Fort Pierce, Florida 34982.

6. Mr. Fontaine is an individual who is a citizen of North Carolina.

7. On information and belief, Defendant is an individual who is a citizen of Nevada.

## BACKGROUND

8. Mr. Fontaine is the owner and sole proprietor of Halo.

9. Halo specializes in the provision of specially formulated peelable paint for automobiles..

10. Mr. Fontaine independently created and invented Halo's proprietary peelable paint composition over the course of more than a year of research and development, working

after hours and sometimes through the night, while maintaining his career in banking and supporting his wife and two children.

11. Fontaine did not steal this technology from any other company, corporation, or individual but rather painstakingly developed Halo's formulation in his own garage.

12. Halo has seen great success in selling its paint product in the marketplace and has provided support and knowledge to its customers regarding said products.

13. Halo provides technical support to its customers and Mr. Fontaine regularly speaks with customers if they have issues with Halo's product, as shown below:



14. Mr. Fontaine started working towards his goal of starting his own paint company in 2012 and was eventually successful, bringing Halo to market for the first time in March of 2014.

15. Mr. Fontaine has never threatened a customer of Halo nor any customer of Raail.

16. Halo is the owner of U.S. Patent No. 9,909,016 (the "'016 Patent"), U.S. Patent No. 10,053,586 (the "'586 Patent"), and U.S. Patent No. 10,487,220 (the "'220 Patent") (collectively, the "Halo Patents").

17. Fontaine initially submitted a provisional patent application on the technology that matured into the Halo Patents on February 28, 2015. Each of the Halo Patents claims priority to the February 28, 2015 submission.

18. Defendant is the owner of U.S. Patent No. 9,273,214 (the "'214 Patent") which was initially submitted to the United States Patent and Trademark Office on March 4, 2013.

19. The '214 Patent was submitted with a non-publication request and did not become publicly available until its issuance on March 1, 2016.

20. A comparison of the '214 Patent and any of the Halo Patents shows that the Halo Patents are not copied and pasted from the '214 Patent.

21. Defendant sued Halo in 2016 for infringement of the '214 Patent which resulted in a settlement between the parties in August of 2017.

22. Defendant is part owner of RAAIL.

23. Alan Nichols is also part owner of RAAIL.

24. Mr. Fontaine and Defendant have known each other for nearly a decade, having worked in the same industry as well as having been adverse to one another at times.

25. At no point has Halo ever reverse engineered RAAIL's product.

26. On May 27, 2021, Halo sued Defendant's company, RAAIL, for infringement of the Halo Patents in the case styled *Halo Composites, LLC v. Raail Holdings Corporation d/b/a RAAIL et al.*, Case No. 3:21-cv-555-BJD-MCR, in the United States District Court for the Middle District of Florida, Jacksonville Division (the "Halo Patent Litigation").

27. Alan Nichols is a named defendant in the Halo Patent Litigation because he directly or indirectly infringed each of the Patents-in-Suit that form the basis of the Halo Patent Litigation and for no other reason.

28. Defendant's profile on Facebook is under the name "Mark Wease."

29. On August 24, 2021, at 8:43 A.M., Alan Nichols made the following post on Facebook (the "Nichols Post") about the Halo Patent Litigation:



30. The response from third parties was to be expected: negative towards Mr. Fontaine and Halo.

31. Mr. Figliozzi, in reply to Mr. Nichols' post, made several defamatory comments about Mr. Fontaine and Halo directed at specific individuals.

32. Specifically, Mr. Figliozzi made the following affirmative statements that are categorically false and cannot be categorized as an opinion:

- Halo/Mr. Fontaine does not provide technical support to his customers;
- Halo/Mr. Fontaine has no product knowledge;
- Halo/Mr. Fontaine has threatened customers;

- Halo/Mr. Fontaine has threatened customers' families;

- Mr. Fontaine is a sociopath;

- Mr. Nichols was sued in the Halo Patent Litigation because he was an "easy target;"

- Halo's patents are literally copied and pasted from the '214 Patent;

- Halo/Mr. Fontaine believed that Mr. Figliozzi had "stepped away for Sorca" as an impetus for the Halo Patent Litigation;

- Halo/Mr. Fontaine invented every type of peelable paint currently on the market after a question from a third party about the contentions of the Halo Patent Litigation;

- Halo/Mr. Fontaine harassed employees;

- Halo/Mr. Fontaine stole technology from RAAIL;

- Halo/Mr. Fontaine stole technology from Duradip;

- Halo/Mr. Fontaine outsourced the development of Halo products; and

- Halo/Mr. Fontaine reverse engineered Mr. Figliozzi's product.

33. The statements as written on Facebook are included herein as a composite Exhibit, **Exhibit A** (the "Nichols Post Comments").

34. Mr. Figliozzi made the assertion that he knew each of the Nichols Post Comments were true and public information when he knew they were false and not public based on his extensive experience with Mr. Fontaine and Halo over the years. *See* Ex. A-7.

35. Mr. Fontaine received a private message on Facebook at 10:22 AM, after the Nichols Post was made and Defendant's statements were published, which shows that he and Halo are the subject of hatred, distrust, ridicule, contempt, or disgrace, as shown below:



36. Defendant's statements have caused third parties to question the character of Mr. Fontaine and Halo as a company, suggesting that greed was the impetus of the Halo Patent Litigation, as shown below:





37.     In addition, Defendant's statements have caused third parties to suggest a boycott of Halo, as shown below and which Defendant and at least five others agreed with:



38. On information and belief, Defendant performed no due diligence into the veracity of any of his statements prior to making them to the extent they are based on information provided by third parties.

39. Defendant did not contact Mr. Fontaine prior to the Nichols Post to confirm the statements Defendant made as part of the Nichols Post.

40. On information and belief, Defendant's statements caused at least one of Halo's customers, Oliver Maddox, to cease purchase of any Halo goods.

41. Halo became aware of the Nichols Post shortly after its posting and thereafter sent a cease and desist letter to Mr. Figliozzi's counsel on September 3, 2021 (the "9/3 Letter") which indicated that litigation was imminent. A true and correct copy of the 9/3 Letter is attached as **Exhibit B**.

42. Mr. Nichols' post was active after receipt of the 9/3 Letter.

43. No response to the 9/3 Letter was sent to or received by Halo.

44. Halo is aware that Mr. Nichols' post has been deleted as well as all comments and replies but does not know when said deletion occurred other than that said deletion occurred after 9/3. It is unknown if further defamatory statements or if statements rehabilitating Plaintiffs' reputation were made because of this deletion.

45. Plaintiffs can also no longer determine every individual who was affected or reacted to Defendant's defamatory statements.

## COUNT I – DEFAMATION

46. Plaintiff incorporates Paragraphs 1-45 as if fully set forth herein.

47. Defendant's statements concerning Mr. Fontaine are false.

48. Defendant's statements were published on Facebook to third parties; specifically, the "friends" of Alan Nichols and to those individuals that Defendants replied to individually. These statements are accessible to anyone with access to Mr. Nichols' Facebook page.

49. Defendant's statements were made without privilege.

50. Defendant made these statements maliciously while knowing they were false and with the intent to cause harm to Mr. Fontaine and his company financially.

51. Mr. Fontaine has suffered actual damage in the form of past and future lost profits, past and future lost income, and lost customers.

52. Mr. Fontaine has also suffered actual damage in the form of shame, suffering, unwanted notoriety, emotional distress, loss of enjoyment of life, and anxiety.

53. Defendant is liable for compensatory damages as well as punitive damages in an amount in accordance with proof at trial.

## COUNT II – DEFAMATION *PER SE*

54. Plaintiff incorporates Paragraphs 1-45 as if fully set forth herein.

55. Florida's concern for individual reputation is reflected in article I, section 4, of the Florida Constitution. *Miami Herald Publ'g Co. v. Ane*, 458 So. 2d 239, 241 (Fla. 1984).

56. Defendant's statements concerning Mr. Fontaine are false.

57. Defendant's statements concerning Halo are false.

58. Defendant's statements were published on Facebook to third parties; specifically, the "friends" of Alan Nichols and to those individuals that Defendants replied to individually. These statements are accessible to anyone with access to Mr. Nichols' Facebook page.

59. Defendant's statements were made without privilege.

60. Defendant's statements tend to subject Mr. Fontaine and Halo to hatred, distrust, ridicule, contempt, or disgrace.

61. Defendant's statements have tended to injure Mr. Fontaine and Halo in its trade and profession as evidence by private messages received by Mr. Fontaine due to the Nichols Post and Defendant's comments that are part of the post as well as the call to boycott Halo online.

62. Defendant's statements have injured Mr. Fontaine in his trade and/or profession by virtue of lowering third party opinion about (1) him as the owner of Halo, (2) how Mr. Fontaine runs Halo, (3) how Mr. Fontaine treats third parties, (4) how Mr. Fontaine treats customers, and (5) Mr. Fontaine's mental stability.

63. Halo has suffered actual damage in the form of past and future lost profits, past and future lost income, and lost customers.

64. Mr. Fontaine has also suffered actual damage in the form of shame, suffering, unwanted notoriety, emotional distress, loss of enjoyment of life, and anxiety.

65. Defendant is liable for compensatory damages as well as punitive damages in an amount in accordance with proof at trial.

## COUNT III – COMMERCIAL DISPARAGEMENT

66. Plaintiff incorporates Paragraphs 1-45 as if fully set forth herein.

67. Defendant's statements concerning Halo's products and services are false.

68. Defendant's statements were published on Facebook to third parties; specifically, the "friends" of Alan Nichols and to those individuals that Defendants replied to individually. These statements are accessible to anyone with access to Mr. Nichols' Facebook page.

69. Defendant's statements were made without privilege.

70. Defendant made these statements maliciously while knowing they were false or with reckless disregard and with the intent to cause harm to Halo.

71. Halo has suffered actual damage in the form of past and future lost profits, past and future lost income, and lost customers as it has seen a decline in business since Defendant's statements were made.

## COUNT IV – CIVIL CONSPIRACY

72. Plaintiff incorporates Paragraphs 1-45 as if fully set forth herein.

73. On information and belief, Mr. Figliozzi worked with Mr. Nichols to perform an unlawful act or a lawful act through unlawful means by generating negative attention attributable to Mr. Fontaine and Halo through the defamatory Nichols Post comments.

74. The Nichols Post comments were published to third parties; specifically the "friends" of Alan Nichols and the individuals that Defendant called out in the defamatory comments.

75. Halo sent Mr. Figliozzi the 9/3 Letter indicating the existence of a potential civil action concerning the Nichols Post.

76. Mr. Figliozzi had a legal duty not to write defamatory remarks about Mr. Fontaine or Halo.

77. Mr. Figliozzi completed the overt act of writing defamatory remarks about Mr. Fontaine and Halo.

78. Mr. Figliozzi had a legal duty to preserve Mr. Nichols' post and his comments and replies given his knowledge of impending litigation.

79. On information and belief, Mr. Figliozzi instructed Mr. Nichols to delete the Nichols Post.

80. On information and belief, Mr. Nichols completed the overt act of deletion by complying with Mr. Figliozzi's instruction and deleted the Nichols Post, including all associated comments and replies.

81. Plaintiffs have been significantly impaired in its ability to prove whether further defamatory statements were made by Defendant and whether rehabilitative statements were made by others.

82. As a result of these conspiratorial acts, Plaintiffs have been damaged by past and future lost profits, past and future lost income, lost customers, as well as mental anguish and emotional distress.

## COUNT V – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

83. Plaintiff incorporates Paragraphs 1-45 as if fully set forth herein.

84. Oliver Maddox was a regular customer of Halo from whom Halo regularly expected to receive orders.

85. On information and belief, Defendant knew that Oliver Maddox was a customer of Halo.

86. Defendant intentionally directed statements towards Oliver Maddox in an attempt to unjustly interfere or disrupt the business relationship he had with Halo. *See supra* at ¶ 35; Ex. A-2.

87. Halo has suffered damages in the form of lost sales as a direct result of Defendant's actions.

WHEREFORE, Plaintiffs Matthew Fontaine and Halo Composites, LLC respectfully request this Court render an order granting:

1. Compensatory damages in the amount in an amount to be determined at trial but no less than $75,000.01;

2. Punitive damages in the amount of at least $1,000,000.00 as a result of Defendant's specific intent to harm Plaintiffs and the actual harm inflicted on Plaintiffs;

3. Plaintiff's reasonable attorneys' fees and costs to the extent allowed;

4. Pre-judgment interest at the maximum rate allowed by law;

5. Post-judgment interest at the maximum rate allowed by law; and

6. Such other relief this Court deems just and proper.

Plaintiff demands a jury trial.

Respectfully submitted this 27th day of September, 2021.

/s/ *Cole Carlson*
Cole Carlson
Florida Bar No.: 112863
GrayRobinson, P.A.
401 East Jackson Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 273-5000
Facsimile: (813) 273-5145
Primary Email Address:
cole.carlson@gray-robinson.com
Secondary Email Address:
lynsey.holtsinger@gray-robinson.com

#45394820 v2